UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA M.,

          Plaintiff,

    v.                                  **DECISION AND ORDER**

                                          23-CV-6490S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

_____

        1.     Plaintiff Jessica M.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.     Plaintiff protectively filed her applications with the Social Security Administration on November 19, 2020.  Plaintiff alleged disability beginning on November 1, 2020, initially due to fibromyalgia, dysfunction of major joints, migraine disorder, diabetes mellitus, essential hypertension, obesity, depression disorder, and anxiety disorder.  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.     On June 7, 2022, ALJ Christine Cutter held a telephonic hearing due to COVID-19 pandemic at which Plaintiff—represented by counsel—and Vocational Expert

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Debra Horton appeared and testified.  (R.[2] at 16, 32-62.)  At the time of the hearing, Plaintiff was a 32-year-old woman with a high school education and past work experience as a nurse assistant, cashier/checker, and customer service representative.  (R. at 24.)

4.     This ALJ considered the case *de novo* and, on July 29, 2022, issued a written decision denying Plaintiff's applications for benefits and finding that Plaintiff could perform light work (R. at 16, 21).  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed her action challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 6, 10.)  Plaintiff filed her Response on January 25, 2024 (Docket No. 11), declaring that a reply was not necessary (id. at 1).  This Court then took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's July 29, 2022, decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

      7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

      9.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If [s]he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits [her] physical
> or mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider
> [her] disabled without considering vocational factors such as
> age, education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, [s]he has the residual functional capacity to
> perform [her] past work.  Finally, if the claimant is unable to
> perform [her] past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.

1999).

10.     Although the claimant has the burden of proof at the first four steps, the

Commissioner has the burden of proof at the fifth and final step.  See Yuckert, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided

into two parts.  First, the Commissioner must assess the claimant's job qualifications by

considering her physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy that a person

having the claimant's qualifications could perform.   See 42 U.S.C. § 423(d)(2)(A);

20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460,

103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

11.     The ALJ here analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the November 1, 2020, onset date.  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  fibromyalgia and dysfunction of major joints.  (R. at 18.)  The ALJ considered either singly or in combination Plaintiff's claimed mental impairments of depression and anxiety disorders, concluding that these impairments were not severe because they caused only minimal limitation in her ability to perform basic mental work activities.  (R. at 19.)  The ALJ also considered Plaintiff's broad functional areas of mental functional as set out in Social Security regulations' "paragraph B" criteria and found that Plaintiff had mild limitations in all four functional areas, that is understanding information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  As a result, the ALJ deemed her claimed depression and anxiety not severe.  (R. at 19-20.)

12.     At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 21.)

13.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except Plaintiff could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl.  (R. at 21.)

14.     This Court notes that the ALJ did not explicitly discuss Plaintiff's mental limitations in the RFC, implying that no mental limitation impeded Plaintiff from performing light work.  In reaching this conclusion, the ALJ found persuasive the opinion of state agency consultant S. Jurgia, Ph.D., that Plaintiff's mental impairments were nonsevere

as consistent with Plaintiff's normal mental status examination results.  (R. at 23; see R. at 71, 82-83, 96-97, 113-14.)   The ALJ also found persuasive the opinion of Adam Brownfeld, Ph.D., that there was no evidence of mental limitations as supported by the doctor's objective findings and Plaintiff's overall treatment record.  (R. at 23-24; see R. at 612.)

15.     At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work.  (R. at 24.)  At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 25-26.)  The ALJ did so by posing hypotheticals to the Vocational Expert of a claimant sharing Plaintiff's age, education, work experience, and RFC.   The Expert opined that this hypothetical claimant could perform such jobs as an office helper, marking clerk, and routing clerk.  (R. at 25.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 25-26.)

16.     Plaintiff now argues that the RFC is not supported by substantial evidence because the ALJ failed to properly consider her mental impairments at Step Two of the analysis and then failed to account for these impairments (whether severe or not) in the RFC.  She accuses the ALJ of cherry picking from the record to render her decision.  She also contends that the ALJ improperly diminished Plaintiff's credibility of her substantive complaints about her fibromyalgia by resting upon her ability to perform activities of daily living.

17.     For the reasons that follow, this Court rejects Plaintiff's arguments and finds that the ALJ had substantial evidence for determining that Plaintiff's depression and anxiety were not severe from the record's support of the ALJ's finding of the mild

limitations for the "paragraph B" criteria.  As for her fibromyalgia, this Court concludes that the ALJ also had substantial evidence beyond Plaintiff's activities of daily living to conclude that Plaintiff has not established her claimed severity of the impairment despite her subjective complaints.

18.    For disability applications filed after March 27, 2017, Social Security regulations require that the agency consider the persuasiveness of medical opinions, see, e.g., 20 C.F.R. §§ 404.1520c(a), 416.920c(a), while not deferring or giving any specific evidentiary weight to any medical opinion, id. §§ 404.1520c(a), 416.920c(a).  The Social Security Administration considers the supportability and consistency of the opinions as the most important factors in assessing that opinion's persuasiveness.   Id. §§ 414.1520c(c)(1), (2), (b)(2), 416.920c(c)(1), (2), (b)(2).  The ALJ must explain her approach with respect to supportability and consistency when considering a medical opinion.  Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (citing, for example, 20 C.F.R. § 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion would be, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The more relevant the objective medical evidence and supporting explanations presented by the medical source in support of their opinion, the more persuasive that medical opinion would be.   Id. §§ 404.1520c(c)(1), 416.920c(c)(1).

19.    "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."  Younes v. Colvin, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015)

(quotation and citation omitted).  When determining the RFC, the ALJ cherry picks from the record when she improperly credits evidence that supports one finding in the RFC while ignoring contrary evidence that favors disability.  Starzynski v. Colvin, No. 1:15-cv-00940 (MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016); Javon W. v. Comm'r, 629 F. Supp. 3d 62, 67 (W.D.N.Y. 2022).   "'Cherry picked' decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion."   Strange v. Comm'r, No. 6:13-cv-527 (GLS/ESH), 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 6, 2014).

20.     Although required to develop the record, "an ALJ is not required to discuss every piece of evidence submitted."  Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).  The failure of the ALJ "to cite specific evidence does not indicate that such evidence was not considered."  Black, 143 F.3d at 386; Brault, 683 F.3d at 448.  The Second Circuit in Brault assumed and was satisfied that the ALJ there considered George Brault's objection to the vocational expert's testimony in implicitly rejecting it and held that there was "no requirement that the ALJ discuss his specific analysis of it."  Brault, 683 F.3d at 448.

21.     Plaintiff here claims the ALJ misread psychological evaluations in the record.  But two psychological assessment and treatment notes[4] cited by Plaintiff were rendered on November 12, 2019, and July 7, 2020, by John Mariano, M.D., of Culver Medical Group[5] predating her November 11, 2020, onset date and, as such, were

---

[4] R. at 475 (June 17, 2020), 514 (November 12, 2019).

[5] R. at 464-67, 513.

properly discounted by the ALJ.  See Joyce J. v. Comm'r, No. 1:20-CV-1112 EAW, 2022 WL 2662966, at *6 n.4 (W.D.N.Y. July 11, 2022) (Court declines to consider treatment notes two years before onset date).  "Although it is within the ALJ's purview to consider pre-onset date evidence, it is not required."  James N. v. Comm'r, No. 3:18-CV-1324 (CFH), 2020 WL 1140498, at *5 (N.D.N.Y. Mar. 6, 2020); see also Desirae P. v. Comm'r, No. 6:21-CV-6219 (JLS), 2023 WL 4183624, at *8 (W.D.N.Y. June 26, 2023).  Pre-onset date medical evidence also is not relevant to evaluating Plaintiff's disability.  E.g., Carway v. Colvin, No. 13 Civ. 2431(SAS), 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014).  Disregarding these pre-onset date assessment and treatment notes does not constitute cherry picking.

22.    Plaintiff also cites ALJ disregarded post-onset treatment as instances of symptoms of depression and anxiety while being prescribed venlafaxine, duloxetine, and amitriptyline until each medicine was discontinued due to causing her nausea.  (Docket No. 6, Pl. Memo. at 13-14, citing R. at 691, 693, 698, 710, 716, 725.)

23.    The ALJ relied on Dr. Brownfeld's March 11, 2021, consultative examination.  (R. at 19; see R. at 610-13.)  There, Plaintiff reported to Dr. Brownfeld depressive symptoms, social withdrawal, and occasional short-term memory issues.  Plaintiff, however, stated that she never sought counseling.  Plaintiff claimed that she stopped working due to fibromyalgia and diabetes but did not claim that her mental health was the reason why she no longer worked.  (R. at 610; see R. at 19.)

24.    Dr. Brownfeld noted that Plaintiff had no history of psychiatric hospitalization or outpatient treatment.  (R. at 610.)  He also noted that Plaintiff had fibromyalgia and was prescribed Duloxetine among other medication.  (R. at 610.)

25.     During his examination, Dr. Brownfeld observed that Plaintiff was cooperative with appropriate eye contact and coherent thought processes, and was goal directed without evidence of hallucinations, delusions, or paranoia.  The doctor found that Plaintiff's affect was full in range, her speech and thought content were appropriate, her attention and concentration skills as well as her recent and remote memory skills were intact.  Dr. Brownfeld noted that Plaintiff's daily activities included her ability to dress, bathe, groom herself, cook, clean, do laundry, shop, manage money, drive, and take public transportation, and although she denied having a social life, she had a good relationship with her family.  (R. at 611-12; see R. at 19.)

26.     Dr. Brownfeld diagnosed Plaintiff with unspecified depressive disorder, fibromyalgia, diabetes, and asthma.  (R. at 612.)  The doctor, however, found no evidence of limitations in Plaintiff understanding, remembering, and applying directions and instructions, using reasoning and judgment to make work-related decisions, or interacting adequately with supervisors, coworkers, and the public.  Further, Dr. Brownfeld concluded that there was no evidence of limitations of Plaintiff sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine, and maintaining personal hygiene.  The doctor also found that Plaintiff was mildly limited in regulating her emotions, controlling behavior, and maintaining well-being.  (R. at 612.)  Although the above findings were consistent with psychiatric problems, Dr. Brownfeld concluded that these limitations did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis."  (R. at 612; see R. at 23.)

27.     Considering Plaintiff's post-onset record, Culver Medical Group's Dr. Mariano examined Plaintiff on April 8, 2021, as follow up for her fibromyalgia, noting

her history of depression and anxiety since November 2017 but observing that she was "doing significantly better" since her last appointment.  Plaintiff stopped taking duloxetine due to gastrointestinal upset.  (R. at 723, 725.)  There is, however, no other discussion here of her depression or anxiety.

28.     Dr. Mariano then examined Plaintiff on May 20, 2021, noting that since her last visit she reported struggling with significant stressors at home arising from financial stability and marital stress.  (R. at 716, 717, 718.)  But Dr. Mariano found that Plaintiff's affect was normal, her thought process as linear, her behavior was appropriate, and she did not appear to be in acute distress.  (R. at 718.)  Plaintiff resumed taking duloxetine for pain but without increasing its dosage to treat side effects while increasing dosage of gabapentin.  (R. at 716, 718.)

29.     Plaintiff also cites her June 10, 2021, video examination by Dr. Mariano noting her history of depression and anxiety.  She reported being extremely depressed and anxious due to her present finances and the stresses from being a homemaker.  Plaintiff also said she had passive suicide ideation that she coped with by journaling, breathing, and reflecting on her children.  (R. at 710.)  This record contains subjective complaints without objective examinations.

30.     On February 10, 2022, Plaintiff was examined by Amanda Kaley, M.D., also of Culver Medical Group who noted Plaintiff's complaints of having depressed and anxious  mood, and her admission that she had considered self-harm.  (R. at 698.)  Upon objective examination, however, Dr. Kaley found that Plaintiff was not in acute distress, she had normal intensity, thought process was linear, and her behavior was appropriate. (R. at 699-700.)

31.     On March 29, 2022, Dr. Kaley observed that Plaintiff kept to herself and was feeling isolated.  Plaintiff had an April 2022 scheduled psychiatric appointment but this case's evidentiary record closed before this appointment.

32.     The ALJ, however, relied upon the absence of objective medical findings in this record of Plaintiff's mental impairment, such as Dr. Kaley's treatment notes from March 29, 2022, indicating that Plaintiff did not take any medication for anxiety or depression due to Duloxetine causing her nausea.  Plaintiff then said she would try to do without the medication.  (R. at 19; see R. at 691, 693.)  During this appointment, Dr. Kaley also found that Plaintiff had more coping mechanisms in place and improved mood but still struggled with overwhelming feelings.  (R. at 693.)

33.     As noted above, Plaintiff stopped taking duloxetine due to nausea and the doctor prescribed amitriptyline for her pain, which may have aided her mood as well.  (R. at 691, 693, 696.)

34.     The ALJ concluded that Plaintiff's claimed depression and anxiety disorders, considered either singly or in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and thus concluded that these impairments were non-severe.  (R. at 19.)

35.     The ALJ further found persuasive the opinion of Dr. Brownfeld that Plaintiff had only mild limitation that did not interfere with her ability to function, because this opinion was supported by the doctor's objective findings and Plaintiff's treatment record. (R. at 23; see R. at 612, 691.)

36.     From review of the above evidence, this Court agrees that the record supports the ALJ's assessment of Plaintiff's mental limitations at Step Two of the

sequential analysis that these mental limitations were not severe.  The ALJ properly excluded pre-onset medical evidence.  The post-onset record here consists of Plaintiff's subjective complains, objective findings of normal affect and processes, and medication treating her symptoms.  While one medication was discontinued due to nausea it was usually replaced with another medication, where Plaintiff noted her condition worsening after she stopped a medication.  There was no evidence of Plaintiff seeking counseling or psychiatric treatment.  (R. at 691, 693.)  Further, this Court finds no record of Plaintiff's ability to work being compromised due to her mental conditions.

37.    This Court finds that the ALJ properly relied upon the opinion of consultant Dr. Brownfeld, who opined that, while Plaintiff had mental limitations, they were not significant enough to interfere with Plaintiff's ability to work.  (R. at 23; see R. at 612.)  The ALJ thus had substantial evidence to conclude that the "paragraph B" criteria were all mild limitations, hence making these mental conditions non-severe impairments.

38.    Next, Plaintiff argues that the ALJ disregarded her taking venlafaxine, duloxetine, and amitriptyline for her depression and anxiety.  Plaintiff was prescribed these medications, but they addressed both pain and depression.  (R. at 464-65, 693, 699.)  Plaintiff's doctors prescribed amitriptyline and duloxetine for her neuropathic and fibromyalgia pain although it was deemed helpful for her mood.  (R. at 691, 693-94, 716, 725.)  For example, duloxetine is used to treat depression and anxiety as well as relieve nerve pain such as the one associated with fibromyalgia.  See Duloxetine 60 Mg Capsule, Delayed  Release  Sprinkle—Uses,  Side  Effects,  and  More, https://www.webmd.com/drugs/2/drug-91490-2114/duloxetine-oral/duloxetine-sprinkle-capsule-oral/details (last visited August 14, 2024).

13

39.     The ALJ found that doctors in 2020 prescribed a trial of duloxetine replacing nausea-inducing venlafaxine for Plaintiff's fibromyalgia.  (R. at 22; see R. at 421, 662.) The medical record here showed that Plaintiff discontinued taking duloxetine in 2021 because that medication also made her nauseous, and doctors in 2022 prescribed amitriptyline as a substitute.  (R. at 691, 693, 696, 725.)  The ALJ discussed that these medications were prescribed for the fibromyalgia treatment without reference to their use for treatment of her mental health conditions.  (R. at 22.)

40.     Thus, this Court finds that these medications had dual usage and, while the ALJ erred in stating that Plaintiff was not taking medication for her anxiety or depression or failing to recognize this dual use, the ALJ did acknowledge that Plaintiff did take but later stopped taking these medicines due to nausea.  (R. at 19, 22.)

41.     This Court further finds that the ALJ did consider Plaintiff's depression and anxiety in the subsequent steps of the sequential analysis.  In determining Plaintiff's RFC, the ALJ found persuasive the opinion of state agency consultant Dr. Juriga that Plaintiff's mental impairments were not severe.  (R. at 23; see R. at 71, 96-97.)  The ALJ also found that Plaintiff's RFC is supported by Dr. Brownfeld's opinion and Plaintiff's activities of daily living.  The ALJ then concluded that Plaintiff could perform light work within the limitations as noted in the RFC.  (R. at 24.)

42.     Thus, Plaintiff's Motion for Judgment on the Pleadings on the ALJ's consideration of her depression and anxiety is denied and Defendant's Motion is granted.

43.     Regarding her fibromyalgia and dysfunction of major joints, the ALJ observed that Plaintiff had a history of low back pain and spasms leading to a diagnosis of fibromyalgia in July 2020.  She claimed that she experienced pain that precluded her

from working and caused her difficulty sleeping.  She added that she had difficulty lifting, squatting, bending, reaching, sitting, climbing stairs, and concentrating.  (R. at 22; see R. at 644.)

44.     The medical record indicates that on January 14, 2021, Dr. Mariano reported that Plaintiff was undergoing care for fibromyalgia since July 27, 2020, and this ailment "significantly interfered with her ability to work."  (R. at 414; see R. at 24.)

45.     The ALJ, however, found only partially persuasive Dr. Mariano's finding of significant interference because it was vague and did not state any functional limitations. (R. at 24.)   The ALJ discounted Plaintiff's subjective complaints stemming from her fibromyalgia because she performed pet care, personal hygiene, household chores, driving and shopping. (R. at 22.)  The ALJ stated that "[w]hile the ability to perform these tasks does not translate to the ability to perform full time work, they are inconsistent with the claimant's allegations of disabling symptoms and limitations."  (Id.)

46.     Furthermore, the ALJ reviewed Plaintiff's treatment notes that showed that on December 10, 2020, trigger point injections were effective for treating pain in her shoulder but not her low back.  (R. at 22; see R. at 425.)  Plaintiff's pain was exacerbated in January 2021 due to a COVID-19 infection (R. at 22; see R. at 420-21.)  The ALJ then noted that Plaintiff complained of pain which was relieved by steroid injections despite Plaintiff's lack of compliance with dietary recommendations and medication.  (R. at 22; see R. at 626, 666, 669, 705.)   As noted above, the ALJ discussed Plaintiff taking venlafaxine and duloxetine for her fibromyalgia.  (R. at 22.)  In February 2022, Plaintiff reported that she did not take medication except metformin and naproxen for last two months.  Plaintiff told Dr. Kaley that she felt better when she stayed moving, but once she

stopped, her pain resumed.  (R. at 22-23; see R. at 697-99.)  Plaintiff's examinations showed decreased strength, mildly antalgic gait, and decreased sensation, but she generally ambulated with a steady gait, had normal strength, and normal range of motion. (R. at 23, 24; see R. at 626, 668, 700.)

47.     The ALJ thus included in the RFC that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl.  Given the evidence in this record, this Court finds that the ALJ properly concluded that Plaintiff "retains the ability, despite her impairments, to perform the above-referenced range of light work within the limitations noted in the residual functional capacity."  (R. at 21, 24.)

48.     Plaintiff also argues that the ALJ improperly discounted her statements about her fibromyalgia and found her capable to work because she cared for her three young children.  This Court disagrees because the ALJ's finding did not rest merely on Plaintiff's credibility as to her performing childcare.

49.     Fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  Social Security Ruling, SSR 12-2p, Evaluation of Fibromyalgia, 2012 WL 3104869, at *2 (SSA July 25, 2012).  "[F]ibromyalgia is a disabling impairment that 'there are no objective tests which can conclusively confirm the disease.'" Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003) (quoting Preston v. Sec'y of Health and Human Servs., 854 F.2d 815, 818 (6th Cir. 1988)).  But the "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability."  Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (citing

Green-Younger, 335 F.3d at 104 (doctor diagnosed claimant with severe fibromyalgia, finding that in certain instances it could be debilitating)).

50.    This Court finds that the ALJ properly relied upon Plaintiff's examination results describing Plaintiff's low back, shoulder, and leg pain, her normal strength and range of motion as well as her care of children.  Further, the ALJ noted Plaintiff's pain disclosure in her Social Security application and her testimony about her movement and daily activities of driving and shopping while in pain, concluding that these activities were inconsistent with her allegations of disabling symptoms and limitations.  The ALJ did not rest solely upon furnishing childcare to determine Plaintiff's ability to work.  (R. at 22-23, 24; see R. at 40-41, 46-47, 53, 328, 612, 668, 700.)  This Court further finds that the ALJ considered the effectiveness of steroid injections and other treatments Plaintiff received for fibromyalgia.  This record therefore supports the ALJ's assessment of the limitations arising from Plaintiff's fibromyalgia and the RFC finding of Plaintiff's ability to perform light work with occasional climbing, balancing, and stooping.  (R. at 21, 24.)   Therefore, Plaintiff's Motion for Judgment on the Pleadings for the consideration of her fibromyalgia is denied.

51.    Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds that no error in the ALJ's determination.  Substantial evidence exists to show mild limitations in the four "paragraph B" functional areas thus supporting the conclusion that Plaintiff's anxiety and depression were not severe.  There was no cherry picking from this record and the ALJ considered Plaintiff's depression and anxiety in forming the RFC.  Evidence in the medical record and Plaintiff's daily activities support

the ALJ's finding that Plaintiff's fibromyalgia did not preclude her from performing light work with identified postural limitations.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        October 3, 2024
              Buffalo, New York


                                                    s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                 United States District Judge